1   J. KEVIN LILLY, Bar No. 119981
    LITTLER MENDELSON, P.C.
2   2049 Century Park East
    5th Floor
3   Los Angeles, CA  90067.3107
    Telephone:     310.553.0308
4
    SHERRY B. SHAVIT, Bar No. 193222
5   BROWN GITT LAW GROUP LLP
    300 North Lake Avenue, Suite 200
6   Pasadena, CA  91101
    Telephone: 888.309.8213
7   Fax: 626.229.1917

8   CARYN M. ANDERSON, Bar No. 247038
    LITTLER MENDELSON, P.C.
9   501 W. Broadway,  Suite 900
    San Diego, CA 92101.3577
10  Telephone:     619.232.0441
    Facsimile:     619.232.4302
11
12  Attorneys for Defendant
    PARAGON SYSTEMS, INC.
13

14              UNITED STATES DISTRICT COURT

15            SOUTHERN DISTRICT OF CALIFORNIA

16  CRUZ MIRELES, WALTER BULLOCK,        Case No.  **'13CV0122 L      BGS**
    ALFONSO DOMINGUEZ, JEFFREY
17  EASLEY, GREGORIO ESCOBEDO,           (San Diego Superior Court Case No. 37-2012-
    BARRY FELDMAN, MANNY GARCIA,         00057454-CU-OE-CTL)
18  ANTHONY JENKINS, MARITZA
    LADRON, JAMES BENNETT, ROBERT        **DEFENDANT'S NOTICE TO FEDERAL**
19  NOWOSEILSKI, GUSTAVO RIVERA,         **COURT OF REMOVAL OF CIVIL**
    VERNON TENNIS, on behalf of          **ACTION FROM STATE COURT**
20  themselves and all others similarly situated,
                                         **[28 U.S.C. §§ 1331, 1441 AND 1446]**
21                   Plaintiffs,

22           v.

23  PARAGON SYSTEMS INC., a California
    Corporation; and DOES 1 thru 50,
24  inclusive,

25                   Defendants.

26

27

28

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION

1  TO CLERK OF THE ABOVE REFERENCED COURT, ALL PLAINTIFFS AND THEIR
2  ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that Defendant PARAGON SYSTEMS, INC. ("Defendant")
4  hereby removes the above-captioned action, Case No. 37-2012-00057454-CU-OE-CTL, from the
5  Superior Court of the State of California, County of San Diego, to the United States District Court
6  for the Southern District of California, pursuant to 28 U.S.C. Sections 1331, 1332, 1441 and 1446.

7      This Notice is based upon the original jurisdiction of the federal district court over the parties
8  under 28 U.S.C. Section 1331 ("Section 1331") based upon the existence of a federal question and
9  under 28 U.S.C. Section 1332(d), the Class Action Fairness Act of 2005 ("CAFA"). Defendant
10  makes the following allegations in support of its Notice of Removal:

11  **I.    JURISDICTION**

12      1.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. sections
13  1441(b) and 1446. This Notice is based upon the original jurisdiction of the United States District
14  Court over the parties under 28 U.S.C. Section 1331 based upon the existence of federal questions as
15  stated below.

16      2.     This Court also has original jurisdiction under CAFA. See 28 U.S.C. § 1332(d). In
17  relevant part, CAFA grants district courts original jurisdiction over civil class actions filed under
18  federal or State law in which any member of a class of plaintiffs is a citizen of a State different from
19  any defendant and where the amount in controversy for the putative class members in the aggregate
20  exceeds the sum or value of $5,000,000, exclusive of interest and costs. CAFA authorizes removal
21  of such actions pursuant to 28 U.S.C. Section 1446. As set forth below, this case meets all of
22  CAFA's requirements for removal.

23  **II.   VENUE**

24      3.     The action was filed in Superior Court for the State of California, County of San
25  Diego. Venue therefore properly lies in the United States District Court for the Southern District of
26  California pursuant to 28 U.S.C. Sections 84(a), 1391(a), and 1441(a).

27

28

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION

### III. PLEADINGS, PROCESS AND ORDERS

4.     On or about December 7, 2012, Plaintiffs CRUZ MIRELES, WALTER BULLOCK, ALFONSO DOMINGUEZ, JEFFREY EASLEY, GREGORIO ESCOBEDO, BARRY FELDMAN, MANNY GARCIA, ANTHONY JENKINS, MARITZA LADRON, JAMES BENNETT, ROBERT NOWOSEILSKI, GUSTAVO RIVERA, VERNON TENNIS, on behalf of themselves and all others similarly situated, (collectively "Plaintiffs") filed a complaint in the Superior Court for the County of San Diego, entitled *CRUZ MIRELES et al. v. PARAGON SYSTEMS, INC.,* Case No. 37-2012-00057454-CU-OE-CTL (herein, the "Complaint"). The Complaint asserts the following eight (8) causes of action: (1) failure to provide meal periods; (2) failure to provide rest break premium pay; (3) failure to pay overtime premium pay; (4) failure to indemnify/reimburse; (5) failure to provide accurate itemized wage statements; (6) failure to promptly pay wages owed; (7) unfair, fraudulent and unlawful business practices; and (8) violation of the California Private Attorney General Act of 2004. Attached hereto as Exhibit A is a true and correct copy of the Complaint.

5.     On or about December 17, 2012, Plaintiffs served Defendant with a copy of the Complaint, along with a summons (Exhibit B), a civil cover sheet (Exhibit C), Notice of Case Assignment (Exhibit D), ADR information (Exhibit E), and Notice to Assignment to Imaging Department (Exhibit F). True and correct copies of these documents are attached hereto.

6.     On January 10, 2013, Plaintiffs served Defendant with their First Amended Complaint ("FAC"). A true and correct copy of Plaintiff's FAC is attached hereto as Exhibit G. The FAC asserts the same eight (8) causes of action as the Complaint: (1) failure to provide meal periods; (2) failure to provide rest break premium pay; (3) failure to pay overtime premium pay; (4) failure to indemnify/reimburse; (5) failure to provide accurate itemized wage statements; (6) failure to promptly pay wages owed; (7) unfair, fraudulent and unlawful business practices; and (8) violation of the California Private Attorney General Act of 2004. (See generally, Exhibit G.)

7.     Plaintiffs filed their FAC as a putative class action and seek to represent, not only themselves, but all others similarly situated, with the relevant time period alleged to be from December 7, 2008, through the present. (See Exhibit G, FAC, ¶ 20.)

LER MENDELSON, P.C.
049 Century Park East
5th Floor
Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION

2.

8. On or about January 14, 2013, Defendant filed an Answer to Plaintiff's FAC in the Superior Court for the State of California, San Diego County, a true and correct copy of which is attached hereto as Exhibit H.

9. Since the "Doe" defendants have not yet been served, they need not join or consent to Defendant's removal of this action. *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1426, 1429 (9th Cir. 1984) (named defendants not yet served in state court action need not join the notice of removal).

10. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the Superior Court for San Diego County.

## IV.   TIMELINESS OF REMOVAL

11. This Notice is timely in that 28 U.S.C. Section 1446(b) requires that a notice of removal in a civil action be filed within thirty (30) days after service of the summons and complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30 day removal period runs from the service of the summons and complaint; receipt of summons and complaint is insufficient to trigger removal period). Plaintiffs filed their Complaint on December 7, 2012. (See Exhibit A.) Defendant was served with the Complaint on December 17, 2012. (Exhibit B.) Accordingly, this Notice of Removal is timely.

## V.   JURISDICTION

### A.   Federal Question Jurisdiction

12. This action is a civil action of which this court has original jurisdiction under 28 U.S.C. Section 1331, and is one which may be removed to this court by Defendant pursuant to the provisions of 28 U.S.C. Section 1441(b) in that the relief sought in the complaint arises under and is completely preempted by Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) ("LMRA").

13. This court has original jurisdiction over this action pursuant to Section 301 of the LMRA. Section 301(a) states: "Suits for violation of [collective bargaining agreements] . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

LER MENDELSON, P.C.
349 Century Park East
5th Floor
Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL          3.
ACTION

14.     Section 301 preempts "claims founded directly on rights created by collective bargaining agreements, and also claims which are substantially dependent on analysis of a collective bargaining agreement." *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 1987) (*citing Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S. Ct. 2425, 2431 (1987) cert. denied, 486 U.S. 1054, 108 S. Ct. 2819, 100 L. Ed. 2d 921 (1988)); *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 1911 (1985); *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877, 1882 (1988).

15.     The preemptive force of Section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement.   *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir. 1983).

16.     To determine whether Section 301 preempts all or some of Plaintiffs' claims, or some of them, and/or any of the members of the putative class(es) they seek to represent, the court must inquire whether "the claims can be resolved only by referring to the terms of the collective bargaining agreement." *Young, supra*, 830 F.2d at 999.   If evaluation of a claim is inextricably intertwined with consideration of the terms of the labor contract, it is preempted and may be removed to federal court.  In rendering this analysis, the court may properly look beyond the face of the Complaint to determine whether the claims are, in fact, Section 301 claims artfully plead to avoid federal jurisdiction. *See e.g., Young, supra*, 830 F.2d at 997; *see Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984) (overruled in part on other grounds) (court may look "outside the four corners of the complaint to support removal.")

17.     In order to determine whether resolution of a state claim requires interpretation of a collective bargaining agreement, the court must "examin[e] the terms of the agreement, the elements of the [claim] involved, and the facts which defendant may assert in defense." *Moreau v. San Diego Transit Corp.*, 210 Cal.App.3d 614, 624 (1989), *relying in part on Hanks v. General Motors Corp.*, 859 F.2d 67, 70 (8th Cir. 1988) (the affirmative defenses must be considered in determining whether resolution of the state law claim requires construing the collective bargaining agreement); *accord Newberry v. Pacific Racing Association*, 854 F.2d 1142, 1146 (9th Cir. 1988) (determining the scope

LER MENDELSON, P.C.
149 Century Park East
5th Floor
Angeles, CA  90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL         4.
ACTION

1   of Section 301 preemption is not based on how the complaint is framed but on whether the claims

2   can be resolved only by referring to the terms of the collective bargaining agreement); *see Olguin,*

3   740 F.2d at 1472.

4        18.    State overtime laws do not apply to employees covered by a collective bargaining

5   agreement that provides an hourly rate at least 30 percent more than the minimum wage and

6   "premium" wage rates for overtime work.  Labor Code § 514; 8 C.C.R. § 11040, 3(l); see *Lujan v.*

7   *Southern Calif. Gas Co.*, 96 Cal.App.4th 1200, 1204 (2002).  If determining whether the collective

8   bargaining agreement overtime rate is a "premium" rate requires interpretation of the collective

9   bargaining agreement, the LMRA preempts state law overtime claims.  *Firestone v. Southern Calif.*

10  *Gas Co.*, 219 F.3d 1063, 1066 (9th Cir. 2000).

11       19.    Under California Labor Code section 512(e), effective January 1, 2011,[1] California's

12  statutory meal period requirement is inapplicable to certain categories of employees, including

13  employees in the security services industry employed as **security officers**, if certain requirements

14  are met.  These requirements are that:  (1) the employee is covered by a valid collective bargaining

15  agreement; and (2) the valid collective bargaining agreement expressly provides for the wages, hours

16  of work, and working conditions of employees, and expressly provides for meal periods for those

17  employees, final and binding arbitration of disputes concerning application of its meal period

18  provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of

19  not less than 30 percent more than the state minimum wage rate.  Accordingly, as of January 1,

20  2011, statutory meal period requirements are no longer non-waivable statutory rights that cannot be

21  modified by a collective bargaining agreement for security officers.  Labor Code § 512(e)

22  (superseding in part *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1082 (9th Cir. 2005).

23       20.    If the parties so intend, employees may by agreement be required to utilize alternative

24  dispute resolution procedures such as arbitration before commencing suit on any claim arising from

25  their employment, including statutory claims.  *Mitsubishi Motors v. Soler Chrysler-Plymouth,* 473

26  U.S. 614, 627 (1985); *Chappel v. Laboratory Corp. Of America*, 232 F.3d 719, 724 (9th Cir. 2000);

27

28  [1] Stats 2010 ch. 662 § 1 (AB 569).

'LER MENDELSON, P.C.
049 Century Park East
5th Floor
Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION

5.

*cf. Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949, 952-53 (2005) (holding the language of the agreement insufficiently specific to indicate the parties intended to include statutory claims). The employees' failure to exhaust such a dispute through these resolution mechanisms may bar any lawsuit on the claim, unless the employee can show that the agreement to arbitrate was unenforceable or invalid. *Chappel*, 232 F.3d at 724.

21.     Effective March 17, 2008, Defendant entered into a collective bargaining agreement ("CBA") with United Government Security Officers of America ("UGSOA"). (Declaration of Ilene Reiter ("Reiter Decl."), ¶ 2, Ex. 1.)  The UGSOA CBA covers all "**security officers**" employed by Defendant pursuant to a contract between Defendant and the United States Department of Homeland Security Federal Protective Services in San Diego, San Bernardino, Riverside and Imperial counties. (*Id.* at § 1.2.)  Further, the UGSOA CBA sets forth specific provisions addressing when employees are entitled to take meal and rest periods, the manner in which they are to be taken, and how they are to be compensated.  (*Id.* at § 6.4.)  Additionally, the UGSOA CBA sets forth specific provisions addressing the security officers' hours of work regular rates of pay and calculation of overtime premium pay.  (*Id.* at §§ 6.1-6.5, 7.1, 7.3.)  The UGSOA CBA also sets forth a grievance and arbitration procedure available as the exclusive forum for resolution of disagreements or disputes "concerning the application, meaning or interpretation of an express provision of the [CBA] or the employment relationship between the Company and employee." (*Id.* §§ 14.1-14.3)

22.     Effective November 20, 2010, Defendant entered into a second collective bargaining agreement with the UGSOA (2010 UGSOA CBA).  (Reiter Decl., ¶ 3, Ex. 2.)  The 2010 UGSOA CBA also covers all "**security officers**" employed by Defendant pursuant to a contract between the Company and the United States Department of Homeland Security Federal Protective Services in San Diego, San Bernardino, Riverside and Imperial counties.  (*Id.* at § 1.2.)  Further, the UGSOA CBA sets forth specific provisions addressing when employees are entitled to take meal and rest periods, the manner in which they are to be taken, and how they are to be compensated.  (*Id.* at § 6.4.)  Additionally, the 2010 UGSOA CBA sets forth specific provisions addressing regular rates of pay, hours of work, and the calculation of overtime premium pay.  (*Id.* at §§ 6.1-7.7)  Further, the 2010 UGSOA CBA, addresses numerous working conditions for the covered employees, including

LER MENDELSON, P.C.
049 Century Park East
5th Floor
Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL       6.
ACTION

1  union membership, rights as union members, nondiscrimination, leaves of absence, holidays,

2  vacation and health and welfare benefits. (See generally, *id.* at Ex. 2.)  The 2010 UGSOA CBA also

3  sets forth a grievance and arbitration procedure available as the exclusive forum for resolution of any

4  disputes raised by an employee concerning the terms of the agreement. (*Id.* at §§ 6.4(D), 14.1)

5  Indeed, the parties specifically provided for the grievance and arbitration procedures set forth therein

6  to exclusively govern statutory meal and rest period claims. (*Id.* at § 6.4)

7       23.    Effective August 31, 2011, Defendant entered into a third CBA with the Security

8  Police and Fire Professionals of America and its affiliated Local #52 ("SPFPA"). (Reiter Decl., ¶ 4,

9  Ex. 3). The SPFPA CBA again covers all "**security officers**" employed by Defendant pursuant to a

10  contract between the Defendant and the United States Department of Homeland Security Federal

11  Protective Services in San Diego, San Bernardino, Riverside and Imperial counties. (*Id.* at § 1.2.)

12  Further, the SPFPA CBA sets forth specific provisions addressing when employees are entitled to

13  take meal and rest periods, the manner in which they are to be taken, and how they are to be

14  compensated. (*Id.* at § 6.6.)  Additionally, the SPFPA CBA sets forth specific provisions addressing

15  the security officers' regular rates of pay, hours of work, the calculation of overtime premium pay

16  and the payment of any final pay on separation from employment. (*Id.* at §§ 7.2, 7.3.)  Further, the

17  2010 UGSOA CBA addresses numerous working conditions for the covered employees, including

18  union membership, rights as union members, nondiscrimination, leaves of absence, holidays,

19  vacation and health and welfare benefits. (See generally, *id.* at Ex. 3.)  Moreover, the SPFPA CBA

20  sets forth the grievance and arbitration procedures available as the exclusive forum for resolution of

21  any disputes arising under the terms of the CBA or related to the employment relationship. (*Id.* at §§

22  14.1-14.3.)  The parties expressed their intent that these exclusive dispute resolution procedures

23  govern any disputes concerning statutory meal or rest period issues, including related PAGA claims.

24  (*Id.* § 6.4(D) (referring to Labor Code Section 2699 *et seq.*).)

25       24.    At all times relevant to their employment with Defendant, each named Plaintiff was a

26  member of the UGSOA and/or the SPFPA and were subject to the applicable CBAs for the relevant

27  time period. (Reiter Decl., ¶ 5.)

28

'LER MENDELSON, P.C.
049 Century Park East
5th Floor
Angeles, CA 90067 3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION       7.

25. The putative class, including named Plaintiffs, which Plaintiffs seek to represent and on whose behalf Plaintiffs assert claims, are Security Officers who at times relevant to this action were members of the USGOA and/or SPFPA and were, therefore, subject to one or more of the foregoing CBAs. (Reiter Decl., ¶ 6.)

26. At all times since January 1, 2008, the California minimum wage has been $8.00.[2] The 2008 UGSOA CBA set an hourly regular rate of pay for covered employees of at least 23.50, which was not less than 30 percent more than the state minimum wage rate. (Reiter Decl., Ex. 1, § 7.1.) The 2010 UGSOA CBA set an hourly regular rate of pay for covered employees of $28.35, which was not less than 30 percent more than the state minimum wage rate. (Reiter Decl., Ex. 2, § 7.1.) The SPFPA CBA set an hourly regular rate of pay for covered employees of $28.60, which was not less than 30 percent more than the state minimum wage rate. (Reiter Decl., Ex. 3, § 7.1.)

27. As the regular rate set by the CBAs was at all relevant times at least 30 percent more than the minimum wage and provided for "premium" wage rates for overtime work, state overtime laws do not apply to Plaintiffs or the putative class members. All requirements of Labor Code Section 514's exception to the application of overtime premium pay requirements are met. Accordingly, Plaintiffs' right to overtime premium pay is as set forth in the applicable CBA. See *Firestone*, 219 F.3d at 1066.

28. Additionally, the regular rate of pay set by the CBAs after the enactment of Labor Section 512(e) was not less than 30 percent more than the state minimum wage rate. Additionally, after the enactment of Labor Code Section 512(e), each CBA provided for the wages, hours of work, working conditions, meal periods and final and binding arbitration of disputes concerning meal period provisions. Therefore, all requirements of Labor Code Section 512(e)'s exception to the application of meal period requirements are met. Accordingly, as of the enactment of Section 512(e), California's statutory meal period requirements were no longer non-waivable statutory rights which could not be modified by the applicable CBAs as to covered Security Officers.

---

[2] Information regarding the history of California's minimum wage is available at: http://www.dir.ca.gov/iwc/minimumwagehistory.htm.

LER MENDELSON, P.C.
349 Century Park East
5th Floor
Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL          8.
ACTION

29.    Plaintiffs allege causes of action under California statute for failure to provide meal period premium pay, failure to provide rest break premium pay, and failure to pay overtime premium pay. (Exhibit G, ¶¶ 29-44.)  Derivative of these claims, Plaintiffs allege that Defendant:  (1) failed to provide Plaintiffs, and purported class members, with accurate itemized wage statements; (2) failed to promptly pay wages owed on termination of employment; (3) engaged in unfair, fraudulent, and unlawful business practices; and (4) violated the California Private Attorney General Act of 2004. (*Id.* at ¶¶ 50-78.)  Plaintiffs assert these causes of action on behalf of a purported class of "[a]ll current or former non-exempt Security Officers who worked for DEFENDANT anytime within four (4) years of the date of this Complaint to the present...." and states that the purported class "consists of hundreds if not thousands of individuals employed by DEFENDANT throughout California." (Exhibit G, ¶¶ 20, 21(b).)

30.    To determine whether the foregoing CBAs must be interpreted to resolve Plaintiff's claims such that Plaintiff's claims are preempted by the LMRA, the court must examine the terms of the applicable CBA, the elements of the claims involved and the facts which Defendant may assert in defense.  As this analysis reveals, the Court can **only** resolve Plaintiff's claims, and the clams of those that they seek to represent, by referring to the terms of the CBAs because Plaintiffs' claims for failure to provide meal period premium pay, failure to provide rest break premium pay, and failure to pay overtime premium, as well as all claims derivative of these claims, are inextricably intertwined with consideration of the terms of the CBAs.  For instance, the CBAs must be **interpreted** to determine:

      a.  Whether named Plaintiffs and purported class members are subject to one or more of the relevant collective bargaining agreements based upon the CBAs' definition of "employee" and the particular work performed;

      b.  Whether the applicable CBAs provide an hourly rate of at least 30 percent more than the minimum wage and "premium" wage rates for overtime work such that the exception to overtime premium pay requirements set forth in Labor Code Section 514 applies;

TLER MENDELSON, P.C.
1049 Century Park East
5th Floor
Angeles, CA  90067-3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION

9.

c. Whether the CBA's are effective and applicable to the named Plaintiffs and purported class members after the enactment of Labor Code Section 512(e) exempting Security Officers from California's statutory meal period requirement;

d. Whether, to the extent effective after the enactment of Labor Code Section 512(e), the CBAs expressly provide "for the wages, hours of work, and working conditions of employees" such that the exemption set forth in Labor Code Section 512(e) applies;

e. Whether, to the extent effective after the enactment of Labor Code Section 512(e), the CBAs expressly provide "for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate" such that Labor Code Section 512(e) applies;

f. Whether the CBAs provide Plaintiffs, and the purported class, to any right to meal period premium pay;

g. Whether named Plaintiffs, and purported class members, were provided with meal and rest periods in accordance with the applicable CBA;

h. Whether the applicable CBA's overtime pay provisions are enforceable and, to the extent that they are, whether named Plaintiffs and purported class members were paid overtime premium pay in accordance with these provisions;

i. Whether the parties expressly and specifically intended the exclusive grievance and arbitration dispute resolution procedure set forth in the applicable CBAs to apply to the statutory claims alleged by Plaintiffs;

j. Whether the exclusive grievance and arbitration dispute resolution procedures set forth in the applicable CBAs are enforceable; and

LER MENDELSON, P.C.
1949 Century Park East
5th Floor
Angeles, CA  90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL          10.
ACTION

k. Whether the statutory wage and hour claims asserted by Plaintiffs are barred by their failure to exhaust contractual arbitration procedures.

Thus, the resolution of Plaintiffs' meal period premium, rest period premium, overtime premium claims, and the resolution of all claims derivative thereof, depends upon the interpretation of one or more collective bargaining agreements – as such, these claims are preempted by Section 301. *See e.g., Levy v. Skywalker Sound*, 108 Cal.App.4th 753, 768-769 (2003) (holding that claim for unpaid wages under California Labor Code § 204 was preempted by Section 301 because it required interpretation of a CBA); *Tift v. Commonwealth Edison Co.*, 366 F.3d 513, 519-520 (7th Cir. 2004) (holding that action under state law was preempted because whether the CBA "properly incorporated the directives" of state law and whether the defendants violated the state law would require "more than the mere reference" to the CBA); *Firestone*, 219 F.3d at 1066 (Plaintiffs' overtime claims under the California Labor Code preempted by Section 301 of the LMRA when collective bargaining agreement contained formula for calculation of overtime rates).

31.    Because resolution of Plaintiffs' claims are inextricably intertwined with the interpretation of the CBAs, state law is "completely preempted" by federal law with respect to these claims, and this matter is properly removable pursuant to 28 U.S.C. § 1441. *Lingle*, 486 U.S. 399 (1988); *Allis Chalmers,* 471 U.S. 202 (1985); *Franchise Tax Board, supra*, 463 U.S. 1; *Stallcop v. Kaiser Found. Hosp.*, 820 F.2d 1044 (9th Cir. 1987); *Miller v. AT&T Network Systems*, 820 F.2d 543 (9th Cir. 1988).

32.    That Plaintiffs have not specifically pled a Section 301 claim is of no consequence. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209 (9th Cir. 1990). Plaintiffs cannot defeat removal by "artfully pleading" their claims and omitting reference to preemptive federal law. *IBEW v. Hechler*, 481 U.S. 851 (1987) (state law tort action "treated as Section 301 claim" by the court); *Laws v. Calmet*, 852 F.2d 431, 432 (9th Cir. 1988) *overruled in part on other grounds* (alleged state claim treated as artfully pled section 301 claim and preempted); *Hyles v. Mensing*, 849 F.2d 1213, 1217 (9th Cir. 1988) (preemption affirmed notwithstanding plaintiff's artful omission of references to preemptive federal law); *Olguin, supra*, 740 F.2d at 1472-74 (preemption affirmed despite attempt to plead around federal jurisdiction). Under the "artful pleading" doctrine, the Complaint must be re-

ILER MENDELSON, P.C.
1049 Century Park East
5th Floor
Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL        11.
ACTION

1  characterized as one arising under the collective bargaining agreement.  *Laws, supra*, 852 F.2d at

2  432; *Hyles, supra*, 849 F.2d at 1215-1216; *Olguin, supra,* 740 F.2d at 1472-1474.

### B.  Original Jurisdiction under the Class Action Fairness Act

4  33.    CAFA grants federal district courts original jurisdiction over civil class action

5  lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a

6  state different from any defendant, and where the matter in controversy exceeds $5,000,000,

7  exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d).  This Court has original jurisdiction over

8  this action pursuant to CAFA because:  (1) at least one member (if not all) of Plaintiff's putative

9  class is a citizen of a state different from Defendant; (2) the action is a class action filed on behalf of

10  more than 100 putative class members; and (3) the amount in controversy exceeds the sum of

11  $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d).

### 1.  At Least One Class Member is a Citizen of a Different State than Defendant

14  34.    For purposes of CAFA, diversity jurisdiction exists if "any member of a class of

15  plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. §§ 1332(d)(2)(A), 1453.

16  35.    For diversity purposes, a person is a "citizen" of the state in which he or she is

17  domiciled.  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983); *see also LeBlanc*

18  *v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001) (citizenship determined at the time the lawsuit is

19  filed); *see also Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991).  A

20  person's domicile is the place he or she resides with the intention to remain, or to which he or she

21  intends to return.  *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

22  36.    Here, Plaintiffs each allege that they reside in California.  (Ex. G, FAC ¶¶ 6-17.)  *See*

23  *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of

24  domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19

25  F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created

26  a presumption of continuing residence in [state] and put the burden of coming forward with contrary

27  evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist.

28  LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "*prima facie*" case of domicile).

ILER MENDELSON, P.C.
1949 Century Park East
5th Floor
Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION

12.

1    Accordingly, for the purposes of Defendant's removal, Plaintiffs are each considered citizens of

2    California.

3        37.    A corporation is deemed to be a citizen of any State by which it has been

4    incorporated and of the State where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1).

5    The "phrase 'principal place of business' in Section 1332(c)(1) refers to the place where a

6    corporation's high level officers direct, control, and coordinate the corporation's activities, *i.e.*, its

7    'nerve center,' which will typically be found at its corporate headquarters." *Hertz Corp. v. Friend*,

8    559 U.S. ___ , 130 S. Ct. 1181; 175 L. Ed. 2d 1029 (2010).

9        38.    Defendant was, and still is, incorporated under the laws of the State of Alabama and

10   is therefore a citizen of the State of Alabama.   *See* 28 U.S.C. § 1332(c)(1); Reiter Decl., ¶ 7.

11   Additionally, Defendant's principal place of operation and corporate headquarters was, and still is,

12   located in the Commonwealth of Virginia. (Reiter Decl., ¶ 8.)

13       39.    Because each of Plaintiffs is a citizen of the State of California and Defendant is a

14   citizen of both Alabama and Virginia, diversity of citizenship under CAFA exists as between

15   Defendant and all Plaintiffs. 28 U.S.C. §§ 1332(d)(2)(A), 1453.

16       40.    Defendants Does 1 through 10 are fictitious.  Pursuant to 28 U.S.C. Section 1441(a),

17   the citizenship of defendants sued under fictitious names must be disregarded for the purpose of

18   determining diversity jurisdiction. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th

19   Cir. 1998).

20       **2.    This Class Action Was Filed on Behalf of More Than 100 Putative Class**
         **Members**
21

22       41.    CAFA provides that "the number of members of all proposed plaintiff classes in the

23   aggregate [not be] less than 100." 28 U.S.C. § 1332(d)(5)(B). CAFA defines "class members" as

24   those "persons (named or unnamed) who fall within the definition of the proposed or certified class

25   in a class action." 28 U.S.C. § 1332(d)(1)(D).

26

27

28

ILER MENDELSON, P.C.
049 Century Park East
5th Floor
Angeles, CA  90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION                                    13.

42.     Plaintiffs allege that this action is brought on a class-wide basis on behalf of themselves and "[a]ll current or former non-exempt Security Officers who worked for DEFENDANT any time within four (4) years of the date of this Complaint to the present." (Exhibit G, ¶ 20.)

43.     In their FAC, Plaintiffs further allege that the purported class "consists of hundreds if not thousands of individuals employed by Defendant throughout California." (Exhibit G, ¶ 21(b).) In fact, Defendant employed approximately 1069 California Security Officers from February 18, 2011 to January 10, 2013.   (Declaration of Amy Kaczke ("Kaczke Decl."), ¶ 7.)   CAFA's numerosity requirement is thus satisfied. *See* 28 U.S.C. § 1332(d)(5)(B).

### 3.     The Amount in Controversy Exceeds the Sum of $5,000,000, Exclusive of Interest and Costs

44.     The CAFA requires the "matter in controversy" to exceed "the sum or value of $5,000,000 exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount. 28 U.S.C. § 1332(d)(6). "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002).   The value of any injunctive relief sought is properly included in the amount in controversy, but is not included in Plaintiff's limited amount for "compensatory damages, restitution, penalties, interest, and attorneys' fees." *See In re Ford Motor Co./Citibank (South Dakota), NA*, 264 F.3d 952, 958 (9th Cir. 2001).

45.     To determine the amount in controversy alleged and assign the governing burden of proof to be borne by the defendant, courts look to the face of the operative complaint. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). In the Ninth Circuit, when a complaint is unclear or ambiguous on its face regarding the amount in controversy, the defendant needs to show only by a preponderance of the evidence that the action meets the jurisdictional requirement under CAFA. *Id.*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION                                                    14.

46.     Here, Plaintiffs' FAC is silent, and therefore, unclear or ambiguous on its face as to the total amount in controversy.  Instead, Plaintiffs seek "compensatory damages according to proof at trial," restitution, "enhanced damages and penalties as permitted under California law," and penalties pursuant to Labor Code Section 2699.  (Exhibit G, Prayer for Relief.)  The failure of the FAC to specify the total amount of damages or other monetary relief sought by Plaintiffs does not deprive this Court of jurisdiction.  See *White v. J.C. Penny Life Ins. Co.*, 861 F.Supp. 25, 26 (S.D. W.Va. 1994) (defendant may remove suit to federal court notwithstanding the failure of Plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any Plaintiff could avoid removal simply by declining … to place a specific dollar claim upon its claim").

47.     Assuming, *arguendo*, that a "legal certainty" test applies instead, its application would not defeat removal here.  This is evident from *Jasso v. Money Mart Express, Inc. et al.*, 2012 U.S. Dist. LEXIS 27215 (N.D. Cal., March 1, 2012) in which the court denied plaintiff's motion to remand.  The *Jasso* court held that while the preponderance of the evidence standard applied, the defendant demonstrated the amount in controversy to a legal certainty using once per week violation rates.  The court further held that those weekly violation rates were properly applied given the *Jasso* complaint's allegations, of violations occurring "at all material times," the allegation that "Defendants engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt employees," and that "[t]his scheme involved, *inter alia*, failing to pay them for all hours worked, missed meal periods and rest breaks in violation of California law."

48.     Additionally, courts have held that descriptive allegations of how often violations occur may be relied on to support a frequency rate of at least once per week.  *See Ray v. Wells Fargo Bank NA*, 2011 U.S. Dist. LEXIS 53155, CV 11-01477 AHM (JCx) at *16-17 (C.D. Cal., May 9, 2011) (denying motion to remand premised upon finding that defendant's estimate of one hour of unpaid overtime compensation per week for each class member was "reasonable and conservative" based on plaintiff's allegation of "consistent" overtime work); *Witkowsky v. Home Depot USA, Inc.*, 2009 U.S. Dist. LEXIS 109320, at *5-6 (C.D. Cal., Nov. 5, 2009) (finding that plaintiff's claim that defendant "systematically" overcharged for floor installation constituted an allegation that the defendant overcharged the customer every time a transaction occurred); *Alvarez v. Ltd. Express,*

ïLER MENDELSON, P.C.
049 Century Park East
5th Floor
Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION

15.

1   *LLC*, 2007 U.S. Dist. LEXIS 58148, at *8-9 (S.D. Cal., Aug. 8, 2007) (finding that despite plaintiff's

2   failure to specify a frequency rate, she had "effectively" alleged that defendant did not allow any of

3   its employees to take meal and rest periods and accepted a 100% violation rate); *Muniz v. Pilot*

4   *Travel Centers, LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal., Apr. 30, 2007) (finding

5   100% violation rate based on plaintiff's choice not to include "fact specific allegations that would

6   result in a putative class or violation rate that is discernibly smaller than 100% used by defendant in

7   its calculations"); *Navarro v. Servisair, LLC*, 2008 U.S. Dist. LEXIS 62513 (N.D. Cal., Aug. 14,

8   2008) (approving use of a 100% violation rate where plaintiffs alleged that they "regularly" worked

9   through their meal periods); *Lippold v. Godiva Chocolatier, Inc.*, 2010 U.S. Dist. LEXIS 67912

10   (S.D. Cal., July 6, 2010) (permitting assumption that plaintiffs worked "13 hours a day every day"

11   based on their allegation that employees "regularly and/or consistently" worked in excess of 12

12   hours a day); *Wilson v. Best Buy Company, Inc.*, 2011 U.S. Dist. LEXIS 14400, at *5-6 (E.D. Cal.,

13   Feb. 8, 2011) (denying motion to remand and finding that defendant's estimate of one hour of

14   overtime per week was supported by plaintiff's allegation of working more than eight hours in a day

15   and in excess of forty hours in a week); *Lyon*, 2010 U.S. Dist. LEXIS 50979, at *10 (assuming 2.5

16   hours of overtime based on allegations that class members "regularly" worked more than 40 hours

17   per week), petition for interlocutory appeal denied; and *Gardner v. GC Services, LP*, 2010 U.S. Dist.

18   LEXIS 67912, at *9 (S.D. Cal., July 6, 2010) (accepting assumption of 30 minutes of overtime per

19   day).

20       49.     Here, removal is based on violation rates similar to those applied in *Jasso* and are

21   based similar allegations as those in *Jasso*.  For instance, Plaintiffs allege that their claims result

22   from Defendant's "uniform application of unlawful employment practices" and that Plaintiffs'

23   purported damages have arisen from a "common course of conduct."  (Exhibit G, ¶ 21(c).)  Further,

24   Plaintiffs allege: (1) "**all**" subclass members were required to take an on-duty meal period pursuant

25   to an unlawful on-duty meal period agreement (Exhibit G, ¶ 34.); (2) subclass members

26   "**consistently** worked four hour periods per day with no off-duty rest breaks (Ex. G, ¶ 38); (3)

27   Defendant required the use of personal cell phones so that Defendant could "**routinely**" contact class

28   members (Ex. G, ¶ 48); and (4) "**[n]one** of the statements provided . . . accurately reflected hours

LER MENDELSON, P.C.
349 Century Park East
5th Floor
Angeles, CA 90067-3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION                                    16.

1    worked, overtime hours owed, actual gross wages or net wages earned." Therefore, as in *Jasso*,

2    either the legal certainty **or** preponderance of the evidence standard will support removal here.

3        50.    Defendant denies Plaintiffs' claims of wrongdoing and their requests for relief

4    thereon. Nonetheless, assuming as true, solely for purposes of removal of this action, the facial

5    allegations in Plaintiffs' FAC, the total amount of wages, penalties, interest, attorneys' fees and other

6    monetary relief at issue in this action is well in excess of this Court's jurisdictional minimum,

7    *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (facts presented in notice of

8    removal, combined with plaintiff's allegations, sufficient to support finding that jurisdictional limits

9    satisfied), calculated as follows:

10            a.  Plaintiffs allege that their claims are typical of the claims of each other

11                purported class member in that all claims allegedly result from Defendant's

12                uniform application of unlawful employment practices and because each

13                purported class member has sustained damages arising out of and caused by

14                defendants' common course of conduct. (Exhibit G, ¶ 21c.) Additionally,

15                Plaintiffs allege that they are adequate representatives of the purported class

16                because their claims are typical of the class claims. (Exhibit G, ¶ 21d.)

17            b.  Accordingly, the average amount in controversy per Plaintiff is typical of the

18                amount in controversy for each other purported unnamed class member.

19                Multiplying the average amount in controversy per named Plaintiff times the

20                number of unnamed purported class member results in an estimated total

21                amount in controversy for the action of **over $15,000,000**, well in excess of

22                the jurisdictional minimum of CAFA as further described below.

23            c.  Plaintiffs allege that the purported class consists of "hundreds if not thousands

24                of individuals." (Exhibit G, ¶ 21b.) Indeed, according to Defendant's

25                records, Defendant employed at least 1,069 non-exempt California Security

26                Officers during the period of from only **February 18, 2011 to January 10,**

27                **2013**. (Kaczke Decl., ¶ 7.)

28

LER MENDELSON, P.C.
349 Century Park East
5th Floor
Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL          17.
ACTION

d.  As calculated in greater detail below and based on the assumptions stated below, the average total amount in controversy for each named Plaintiff, including **only** meal period premium, rest period premium, expense reimbursement, wage statement penalties and waiting time penalties comes out to at least $14,668.  Multiplying this average amount in controversy for the named Plaintiffs times the minimum total number of purported class members (at least 1,069 as stated above) comes out to a total minimum amount in controversy for the purported class **of at least $15,680,368**.  This amount does not even take into consideration a value for the requested injunctive relief, PAGA penalties or attorney fees.

e.  In calculating the average amount in controversy per named Plaintiff, Defendant assumed that the named Plaintiffs worked the periods of time stated in the FAC[3] and earned the hourly wage rate stated in the FAC for the entire work period.  (Exhibit G, ¶¶ 5-17.)

f.  Additionally, Defendant assumed that named Plaintiffs missed one meal period every two weeks, missed one rest period every two weeks and worked .5 hours of overtime every week.  See *Jasso, supra*, 2012 U.S. Dist. LEXIS 27215.

g.  Plaintiffs claim that none of the wage statements provided were accurate. (Exhibit G, ¶ 53.)  Under Labor Code section 226(e), an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with the requirements for wage statements is entitled to recover the greater of all actual damages or $50 for the initial pay period and $100 for each violation thereafter (not exceeding $4,000).

h.  According to the CBAs governing the purported class members, Plaintiffs were at all relevant times paid on a biweekly basis. (Reiter Decl., Ex. 1, § 7.4;

---

[3] Where the FAC states that the Plaintiff began working in "March of 2009," Defendant assumed Plaintiff began working on March 31, 2008, for the purposes of this analysis.

TILER MENDELSON, P.C.
049 Century Park East
5th Floor
Angeles, CA  90067.3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL          18.
ACTION

Ex. 2, § 7.4; Ex. 3, § 7.3.)

i.   Defendant assumes that named Plaintiffs were not reimbursed for a minimal amount of $5 per week related to Plaintiffs' claims they were required to use personal cell phones for work purposes.

j.   Based on the foregoing assumptions and the law applicable to Plaintiffs' claims, the average amount at issue per named Plaintiff is as follows:

| Named Plaintiff | Workweeks (4 Year SOL) | Pay Periods (1 Year SOL) | Meal Period Claim | Rest Break Claim | OT Premium Claim | Exp. Reimbursement | Section 226 Claim ("Wage Statement" Penalties) | Section 203 Claim ("Waiting Time Penalties") | Total |
|---|---|---|---|---|---|---|---|---|---|
| Mireles | 215 | 29 | $3,016 | $3,016 | $4,524 | $1,075 | $2,850 | | $14,482 |
| Bullock | 215 | 29 | $3,016 | $3,016 | $4,524 | $1,075 | $2,850 | | $14,482 |
| Dominguez | 215 | 29 | $3,016 | $3,016 | $4,524 | $1,075 | $2,850 | | $14,482 |
| Easley | 215 | 29 | $3,016 | $3,016 | $4,524 | $1,075 | $2,850 | | $14,482 |
| Escobedo | 215 | 29 | $3,016 | $3,016 | $4,524 | $1,075 | $2,850 | | $14,482 |
| Feldman | 215 | 29 | $3,016 | $3,016 | $4,524 | $1,075 | $2,850 | | $14,482 |
| Garcia | 215 | 29 | $3,016 | $3,016 | $4,524 | $1,075 | $2,850 | | $14,482 |
| Jenkins | 215 | 29 | $3,016 | $3,016 | $4,524 | $1,075 | $2,850 | | $14,482 |
| Ladron | 176 | 10 | $2,469 | $2,469 | $3,703 | $880 | $950 | $6,734 | $17,206 |
| Bennett | 215 | 29 | $3,016 | $3,016 | $4,524 | $1,075 | $2,850 | | $14,482 |
| Rivera | 215 | 29 | $3,016 | $3,016 | $4,524 | $1,075 | $2,850 | | $14,482 |
| Tennis | 211 | 29 | $2,960 | $2,960 | $4,440 | $1,055 | $2,850 | | $14,266 |
| Nowosielski | 135 | 4 | $1,894 | $1,894 | $2,841 | $675 | $350 | $6,734 | $14,388 |

**Average Per Named Plaintiff**   $14,668

No. of Purported Class Members   1,069

**Estimated Total at Issue**   **$15,680,368**

51.   Based on the foregoing, the amount in controversy for just some of named Plaintiffs' claims for damages, penalties, attorney fees, other monetary relief, calculated solely for purposes of illustration, clearly exceeds the $5,000,000 jurisdictional prerequisite of this Court, as required by 28 U.S.C. Section 1332(d) by both a preponderance of the evidence and a legal certainty.

52.     As a result, Although Defendant denies Plaintiffs' claims of wrongdoing and their requests for relief thereon, based upon the facial allegations in Plaintiffs' FAC and assuming, arguendo, Plaintiffs, and the putative class members they seek to represent, are able to prove these allegations, the total amount of monetary relief sought by Plaintiffs and the other purported class members is in excess of the $5,000,000 exclusive of interest and costs, plus attorney fees.  Thus removal of this action under CAFA is appropriate.

## VI.     SUPPLEMENTAL JURISDICTION

53.     To the extent that there are remaining claims for relief that do not arise under Section 301 or are not completely preempted by Section 301, these claims are within the supplemental jurisdiction of this Court under 29 U.S.C. Section 1367(a) in that they are so related to the Section 301 claims that they form part of the same case or controversy under Article III of the United States Constitution. In the alternative, any such other claims for relief are separate and independent claims which are properly removable to this Court pursuant to 28 U.S.C. Section 1441(c). Thus, this action is removable in its entirety

## VII.     NOTICE TO THE STATE COURT AND PLAINTIFF

54.     Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Southern District of California, written notice of such filing will be given by the undersigned to Plaintiffs' Counsel of Record, Mathew B. Butler and Andrew C. Myers of Nicholas & Butler LLP, and a copy of the Notice of Removal will be filed with the Clerk of the California Superior Court for the County of San Diego.

Dated: January 16, 2013

/s/ Caryn Anderson
KEVIN LILLY
CARYN ANDERSON
LITTLER MENDELSON, P.C.
Attorneys for Defendant
PARAGON SYSTEMS, INC.

'LER MENDELSON, P.C.
049 Century Park East
5th Floor
Angeles, CA 90067-3107
310.553.0308

DEFENDANT'S NOTICE TO FEDERAL COURT
OF REMOVAL FROM STATE COURT OF CIVIL
ACTION                          20.