UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRUZ MIRELES, *et al.,* on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PARAGON SYSTEMS, INC.,<br><br>Defendant. | Civil No. 13cv122 L (BGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [doc. #63]** |

Plaintiffs' first amended complaint alleges eight causes of action against defendant Paragon Systems, Inc.: (1) Failure to Provide Meal Period Premium Pay, (2) Failure to Provide Rest Break Premium Pay, (3) Failure to Pay Overtime Premium Pay, (4) Failure to Indemnify/Reimburse, (5) Failure to Provide Accurate Wage Statements, (6) Failure to Promptly Pay Wages Owed, (7) Unfair, Fraudulent and Unlawful Practices, and (8) Violation of the Private Attorneys General Act ("PAGA").

Defendant seeks partial summary judgment on plaintiffs' first, third and fourth causes of action. The motion has been fully briefed and is considered without oral argument.

/ / /

/ / /

/ / /

## I. Background[1]

Paragon has been registered as a Private Patrol Operator with the California Bureau of Security and Investigative Services under Business and Professions Code, Division 3, Chapter 11.5, since October 12, 2006. All ten named plaintiffs[2] are or were employed by Paragon as security officers in the security services industry. Paragon negotiated and entered into several collective bargaining agreements ("CBAs") covering many of Paragon's security officer employees, including the named plaintiffs.

Paragon and the United Government Security Officers of America ("UGSOA") Local 52 entered into a CBA effective March 17, 2008 ("2008 SD CBA"), covering security officer employees working in San Diego, San Bernadino, Riverside, and Imperial counties. Another CBA was entered into on November 20, 2010 ("2010 SD CBA"), between Paragon and the UGSOA.

Next, Paragon entered into a CBA with the International Union, Security, Police and Fire Professionals of American ("SPFPA) Local 52 effective August 31, 2011 ("2011 SD CBA"), covering security officer employees working in San Diego, San Bernadino, Riverside, and Imperial counties.

Finally, Paragon entered into a CBA with SPFPA Local 3, effective August 1, 2010 ("LA CBA"), covering security officer employees working in Los Angeles and surrounding areas.

At all relevant times, all of the named Plaintiffs, except Gregorio Escobedo, are or were covered by one or more of the SD CBAs. Gregorio Escobedo is or was covered by the LA CBA.

## II. Legal Standard for Partial Summary Judgment

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material

---

[1] Unless otherwise noted, the facts are from the parties' Joint Statement of Undisputed Facts regarding defendant's motion for partial summary judgment. [doc. #83]

[2] In connection with plaintiffs' motion to file a second amended complaint, plaintiff Robert Nowosielski was dismissed with prejudice from the action and Barry Feldman and Vernon Tennis were removed as named party plaintiffs while remaining members of the class.

when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting FED. R.

3

CIV. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### III. Discussion

#### A. Overtime and Meal Premium Pay

Defendant argues that plaintiffs, whose employment has been covered by the various CBAs, cannot prevail on their first and third causes of action because California Labor Code §§ 510(a) and 512(a) do not apply to them. Instead, Labor Code§§ 514 and 512(e) exempt employees covered by a valid CBA from state overtime and meal period requirements.

Plaintiffs contend, however, that defendant failed to pay premium pay for hours worked in excess of eight hours in a day, as provided in Labor Code § 510, and defendant violated Labor Code § 512(a) by not providing plaintiffs meal periods in accordance with the Industrial Welfare Commission ("IWC") Wage Order 4-2001 § 11(A). Plaintiffs assert that the "rights afforded to employees under sections 510 and 512 are non-waivable statutory minimum guarantees which apply regardless of a CBA." (Opp. at 7.) According to plaintiffs, because the CBAs in the present case provide premium wages for hours in excess of 40 per week but not in excess of eight hours per workday, only some overtime hours are provided with premium pay; therefore, Labor Code section 514 does not exempt defendant from compliance with section 510. And non-compliance with the IWC meal period does not permit an exemption for defendant under the CBAs.

#### 1. Relevant Statutory Provisions

Labor Code § 510 concerns a day's work and overtime pay:

> (a) Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. The requirements of this section do not apply to the

4

> payment of overtime compensation to an employee working pursuant to any of the following:
>
> . . .
>
> (2) An alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514.

Labor Code § 514 provides, in relevant part, for an exemption:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Labor Code § 512(a) sets forth in relevant part, the requirements for providing meal periods to employees:

> (a) An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.

Section 512 (e) provides for an exemption under certain conditions:

> (e) Subdivisions (a) and (b) do not apply to an employee specified in subdivision (f) if both of the following conditions are satisfied:
>
> (1) The employee is covered by a valid collective bargaining agreement.
>
> (2) The valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

### 2. Section 510's Definition of "Overtime"

Plaintiffs contend that the definition of overtime found in § 510(a) – hours worked in excess of eight in one day – is applicable notwithstanding the CBAs and no exemption under § 514 can be provided for defendant. The California Court of Appeals recently addressed this issue in *Vranish v. Exxon Mobil Corporation*, 223 Cal. App.4th 103, 106-107 (2014):

> Does Labor Code section 510's definition of "overtime" apply to employees covered by a valid collective bargaining agreement (§ 514)? Based upon the plain language of section 514, legislative history, an opinion from the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE), and public policy, we conclude that section 510 does not apply to section 514.

5

The court of appeals held that because plaintiffs in *Vranish* were covered by a qualifying CBA, § 510's definition of "overtime" is inapplicable. "[S]o long as the collective bargaining agreement establishes regular and overtime hours within the work week, establishes premium pay for all such hours worked, and the regular rate of pay is more than (30) percent above the minimum wage, then the exemption established by. . . § 514 is applicable." *Vranish*, 223 Cal. App.4th at 112.

Although the parties have provided other cases for consideration, none are directly on point as is the *Vranish* case. This issue having been resolved by the California Court of Appeals, the next inquiry is whether the CBAs in this case are qualifying CBAs.

### 3. Qualifying CBAs

In order to establish the exemptions available under Labor Code §§ 514, a valid collective bargaining agreement must (1) provide for wages, hours of work, and working conditions of the employees; (2) provides premium wage rates for all overtime hours worked ; and (3) the regular rate of pay is more than 30 percent above the state minimum wage. For a § 512(e) exemption, the CBA, in addition to these elements, must also expressly provide for meal periods for those employees, and final and binding arbitration of disputes concerning application of its meal period provisions.

As noted by defendant, each of the CBAs expressly provides for wages, hours of work, working conditions, meal periods, and arbitration for meal period disputes. Wages are found in Article 7 of the 2008, 2010, 2011 SD CBAs, and the LA CBA. For example, the 2010 San Diego provides the "Straight Time Rate of Pay" as follows:

```
October 1, 2009 to September 30, 2010    $27.25
October 1, 2010 to September 30, 2011    $28.35.
October 1, 2011 to September 30, 2012    To Be Determined (TBD)
October 1, 2012 to September 30, 2013    TBD
```

(Butler Declar., Exh. 1.) Article 7 in the remaining CBAs are similar.

It is undisputed that the minimum wage in California during the times in question was $8.00 per hour and the regular rate of pay is substantially more than 30 percent above the state minimum wage.

6

1  The CBAs also provide for premium wage rate for hours worked in excess of 40 hours
2  per week:

3  > Overtime pay is calculated at one and one-half (1-1/2) times the employee's straight time rate of pay for all hours of work in excess of forty (40) hours of actual work in any single workweek.

5  (Butler Declar., Exh. 1, 2, 3, 4.)

6  Hours of work are found in Article 6 of each of the CBAs. Working conditions are found
7  in Articles 5-19 of the 2008 San Diego CBA and Articles 5-16 of the 2010, 2011 San Diego
8  CBAs, and the LA CBA. Meal periods terms are found in Article 6.4 of the 2008 San Diego
9  CBA and Article 6.6 of the 2010, 2011 San Diego CBAs, and the LA CBA. Finally, arbitration
10 for meal period disputes is provided in Article 14 of the 2008 San Diego CBA; Articles 6.4(D)
11 and 15 of the 2010 SD CBA; Articles 6.6(d) and 13 of the 2011 San Diego CBA; and Article 14
12 of the LA CBA. (*See* Butler Declar., Exh. 1-4.)

13 Plaintiffs have not challenged defendant's evidence that the CBAs meet the requirements
14 for exemption under §§ 512(e) or 514 as qualifying CBAs except for the term "hours of work."
15 According to plaintiffs, the CBAs fail to expressly identify all hours of work: "Merely defining
16 what constitutes a workweek is not the equivalent of expressly identifying "hours worked."
17 (Opp. at 11.) Also plaintiffs contend that the term "hours of work" within §§ 512(e) and 514 has
18 the same meaning as the IWC's definition of "hours worked" but provide no authority to support
19 their position.

20 The Industrial Welfare Commission ("IWC") defines "hours worked" as "the time during
21 which an employee is subject to the control of an employer, and includes all of the time the
22 employee is suffered or permitted to work, whether or not required to do so."  (IWC Order 4-
23 2001, § 2(K).)

24 The various CBAs include provisions covering hours of work. For example, the 2010 SD
25 CBA provides in relevant part:

26 > SECTION 6.1 - <u>Purpose of this Article</u>. . . . [N]othing contained in this Article or Agreement shall be construed as a guarantee or commitment by the Company to any employee of a minimum or maximum number of hours of work per day, oer week or per year. It is expressly agreed and understood by the Parties that such scheduling and personnel needs shall be the sole prerogative of the Company.

7

> SECTION 6.2 - <u>Workweek.</u> The Company's workweek shall consist of seven (7) days beginning on Monday at 12:01 a.m. and ending the following Sunday at 12:00 p.m. (midnight[)]
>
> SECTION 6.3 - <u>Workday and Shifts</u>. A workday shall be defined as from 0001 hours until 2400 hours as use throughout this Agreement the term "actual work" shall be synonymous with "work time" or "working time" as those terms are defined under the Fair Labor Standards Act.

(Butler Decl., Exh. 1 at 7.)

As noted in defendant's reply, plaintiffs' contention that the CBAs must "list each and every specific shift the covered employees will work" is clearly not supported in law or fact. (Reply at 4.) The various provisions in each of the CBAs define workday and workweek which informs employees of the times under which they may be "subject to the control of the employer." (Opp. at 11.) As a matter of law, the CBAs satisfy the "hours of work" element within the meaning of Labor Code §§ 512(e) and 514 which results in plaintiffs being covered by a qualifying CBA.

As discussed above, §§ 510 and 512(a) are not applicable to §§ 512(e) and 514 because the undisputed facts establish that each of the elements of the §§ 514 and 512(e) exemptions have been met and therefore, plaintiffs are covered by qualifying CBAs. Defendants are entitled to partial summary judgment on plaintiffs' first and third causes of action.

**B.     Labor Management Relations Act ("LMRA") § 301 Preemption**

Defendant contends that plaintiffs' first and third causes of action are preempted by LMRA § 301.

District courts have original jurisdiction over actions alleging violations of a collective bargaining agreement under § 301(a) of the LMRA. 29 U.S.C. § 185(a). If a court is required to interpret the terms of a CBA when state law claims are alleged, those claims are preempted by the exclusive federal jurisdiction provided by the LMRA. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1984). "The pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 23 (1983) (quoting 29 U.S.C. § 185(a)). Federal preemption may exist even when a

plaintiff has not framed his or her state-law claim so that it explicitly refers to a CBA. *International Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987). But not every claim brought by an employee governed by a CBA is preempted by § 301. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).

Courts undertake a two-step analysis to determine whether § 301 preempts a plaintiff's claim. First, if the asserted claim involves a right that exists "solely as a result of the CBA," and not a right conferred upon the employee by virtue of state law, "then the claim is preempted, and [the court's] analysis ends there." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir.2007). "If, however, the right exists independently of the CBA, [the court] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 3 86, 394 (1987)).

Plaintiffs bring their claims for overtime and meal period violations under state law. But as determined above, Labor Code §§ 512(e) and 514 provide that §§ 510(a) and 512(a) do not apply to an employee covered by a valid CBA, and the CBAs here establish that the exemptions of §§ 514 and 512(a) have been met. Because the exemptions apply as a matter of law, the overtime and meal period rights plaintiffs have exist entirely as a result of the CBAs, and do not arise from state law. Accordingly, plaintiffs' first and third causes of action are preempted under the LMRA § 301.

### C. Failure to Indemnify

Plaintiffs allege that they are owed reimbursement for expenses incurred for using their personal cell phones to carry out their duties under Labor Code §2802(a), which provides:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer. . . .

Paragon contends that six of the named plaintiffs did not incur an expense or loss which was necessary as part of his or her job, specifically as it relates to cell phones. The deposition testimony of plaintiffs Bennett, Escobedo, Bullock, and Garcia admitted that Paragon did not require them to use their personal cell phones for work purposes. (Bennett Depo. at 16-18, 19; Escobedo Depo. at 39, 59; Bullock Depo. at 34, 45; Garcia Depo. at 163, 164.) As a result, these

four named plaintiffs did not incur "necessary expenditures" in "direct consequence of the discharge of [their] duties" and therefore, they have no claim under Labor Code §2802.

Plaintiffs Easley and Rivera both testified that they did not sustain any losses as a result of any work-related cell phone use. (Rivera Depo. at 114; Easley Depo. at 41.) Thus, Easley and Rivera did not suffer any losses that would support a claim under Labor Code §2802.

Because plaintiffs have failed to make a showing sufficient to establish an element essential to their case on which they will bear the burden of proof at trial, defendant is entitled to summary judgment as to these six named plaintiffs' Labor Code § 2802 claims.

## IV. Conclusion

Based on the foregoing, defendant Paragon's motion for partial summary judgment is **GRANTED** as follows:

  1. Plaintiffs' first and third causes of action are dismissed; and

  2. Plaintiffs' claims under Labor Code § 2802, failure to indemnify, are dismissed against plaintiffs Bennett, Escobedo, Bullock, Garcia, Easley and Garcia only.

**IT IS SO ORDERED.**

DATED: September 4, 2014

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. BERNARD G. SKOMAL
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

10