UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRUZ MIRELES, *et al.,* on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>PARAGON SYSTEMS, INC.,<br><br>　　　　　　　　Defendant. | Civil No. 13cv122 L (BGS)<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION [doc. #66]** |

Pending before the Court is Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23. The motion has been fully briefed and is decided on the papers submitted.

**I.　Background**

Paragon has been registered as a Private Patrol Operator with the California Bureau of Security and Investigative Services under Business and Professions Code, Division 3, Chapter 11.5, since October 12, 2006. Defendant provides security services to hundreds of federal government sites throughout California under contracts with the United States Department of Homeland Security's Federal Protective Services. All named plaintiffs[1] are or were employed by Paragon as security officers in the security services industry and were covered by one or several

---

[1] In connection with plaintiffs' motion to file a second amended complaint, plaintiff Robert Nowosielski was dismissed with prejudice from the action and Barry Feldman and Vernon Tennis were removed as named party plaintiffs while remaining members of the class.

collective bargaining agreements ("CBAs") entered between Paragon and various unions.

The first amended complaint alleges eight causes of action against defendant Paragon Systems, Inc.: (1) failure to provide meal period premium pay, (2) failure to provide rest break premium pay, (3) failure to pay overtime premium pay, (4) failure to indemnify/reimburse, (5) failure to provide accurate wage statements, (6) failure to promptly pay wages owed, (7) unfair, fraudulent and unlawful practices, and (8) violation of the private attorneys general act ("PAGA"). Defendant sought partial summary judgment on plaintiffs' first, third, and as to some named plaintiffs, the fourth causes of action. The Court granted that motion. (*See* Order filed September 4, 2014, doc. #100].) Accordingly, the failure to provide meal period premium pay and failure to pay overtime premium pay are no longer at issue in determining the merits of the pending motion.[2]

## II.    Plaintiffs' Motion for Class Certification

In seeking to certify the class, plaintiffs define the class as:

> "All current and former non-exempt Security Officers who worked for Defendant anytime from June 2010 to the present." (Mtn. Ps&As at 2.)

Plaintiffs propose the following subclasses:

> • Subclass 1: "All current or former non-exempt Security Officers who worked for DEFENDANT during the CLASS PERIOD, who have not been compensated premium pay for all hours worked in excess of eight (8) hours per day and/or all hours worked on the seventy consecutive day in a workweek."
>
> • Subclass 2: "All current or former non-exempt Security Officers who worked for DEFENDANT during the CLASS PERIOD, who have been prohibited from taking 30-minute uninterrupted meal periods and who were not paid premium pay."
>
> • Subclass 3: "All current or former non-exempt Security Officers who worked for DEFENDANT during the CLASS PERIOD, who have not been provided lawful rest periods or premium pay by DEFENDANT."
>
> • Subclass 4: "All current or former non-exempt Security Officers who worked for DEFENDANT during the CLASS PERIOD, who DEFENDANT failed to compensate for all hours worked before and after their scheduled shift, including but not limited to hours worked while commuting to and from their place of employment with a company issued firearm.

---

[2] Plaintiffs have not moved to certify claims for inaccurate wage statements, failure to indemnify or reimburse, failure to pay wages promptly, or violation of Business and Professions Code § 17200.

2

As previously noted, plaintiffs' first and third causes of action have been dismissed by summary adjudication; therefore, Subclasses 1 and 2 are no longer under consideration. The fourth subclass that plaintiffs seek to certify was not pleaded in the FAC. The Court denied plaintiffs' motion to file a second amended complaint to add these allegations. (Order filed June 16, 2014.) Accordingly, only Subclass 3, which addresses the rest and premium pay claim under California Labor Code § 226.7 and Industrial Welfare Commission Wage Order No. 4, remains as a potentially viable class claim.

**III.   Objections**

Before turning to the merits of plaintiffs' motions, the Court notes that both parties have submitted objections to various evidentiary materials.

Defendant objects to certain evidence submitted by plaintiffs in support of their motion for class certification including 18 late declarations from putative class members; the declaration of putative class member, Guillermo Rodriguez; declarations not supported by personal knowledge; and evidence concerning claims that are not at issue in the motion for class certification. Also, defendant objects to plaintiffs' 32 "cookie cutter" declaration of putative class members that nearly one third later retracted or otherwise admitted to making inaccurate statements in their original declarations.

In addition to plaintiffs' objections to certain evidence, plaintiffs attached a motion to strike the evidence to their objections. Plaintiffs' motion to strike is denied as procedurally improper. Under the Civil Local Rules, prior to filing a motion, the party must obtain a hearing date from chambers and the motion must be a separate document. Civ. L.R. 7.1(b)

Plaintiffs objects to portions of the declaration of Dannie Sims, Nicole Ferritto, Keith Brooks' Officer Statement; certain class participants' declarations concerning on-duty or off-duty meal periods; certain class participants' declarations asserting they received proper rest periods; certain class participants' declarations that their paystubs are not inaccurate; certain class participants' declarations that they receive premium pay of overtime hours worked; certain class participants' declarations asserting they do not recall signing an of-duty meal period agreement; evidence of employees who are not members of a union; citation to a 2009 DLSE

3

opinion letter regarding meal periods; citation to a 2002 DLSE opinion letter regarding on-duty meal periods; and citation to a 1994 DLSE opinion letter regarding waiver of state minimum standards on meal periods.

The Court may consider material evidence submitted by the parties to determine that Rule 23 requirements are satisfied. *Gonzalez v. Millard Mall Servs.*, 281 F.R.D. 455, 459 (S.D. Cal. 2012). The question of admissibility need not be considered at the time review of a class certification motion is undertaken. *Id.* Therefore, to the extent the parties' evidentiary objections are submitted in the context of this motion, the objections are overruled.

Further, evidentiary materials that are speculative, provide a legal conclusion, or are irrelevant will not be considered in deciding the present motion for class certification.

**IV.     Legal Standard for Class Certification**

Under Federal Rule of Civil Procedure 23, plaintiffs must establish that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). These requirements are "commonly referred to as the numerosity, commonality, typicality, and adequacy requirements." *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010). Plaintiff bears the burden of establishing that all four requirements of Rule 23(a) are met. *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ( "Dukes").

If a court finds that the Rule 23(a) requirements are met, the court must consider whether the class is maintainable under one of the three alternatives set forth in Rule 23(b). *Dukes*, 131 S S. Ct. 2541, 2548.

Further, the *Dukes* Court made clear that "Rule 23 does not set forth a mere pleading standard." *Dukes*, 131 S.Ct. at 2551. "[A] party seeking to maintain a class action 'must affirmatively demonstrate . . . compliance' with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Dukes*, 131 S.Ct. at 2551 - 2552). Thus, "a party must . . . 'be prepared to prove that there are in fact sufficiently numerous parties, common questions of law

or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Id.* (quoting *Dukes*, 131 S. Ct. at 2551). Satisfying those prerequisites, "effectively limit[s] ... class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 131 S.Ct. at 2550 (internal quotation marks and citations omitted).

"[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). "More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with Rule 23(a) requirements." *Id.* (citing *Dukes*, 131 S. Ct. at 2551-52.) However, the Supreme Court has also noted that "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013).

### A.  Rule 23(a) Requirements

#### 1.  Numerosity

Numerosity requires that "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific minimum number of plaintiffs needed to obtain class certification; "[w]hether joinder [is] impracticable depends on the facts and circumstances of each case and does not, as a matter of law, require the existence of any specific minimum number of class members." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal.1994); *see also Espinoza v. Domino's Pizza, LLC*, 2009 WL 882845, *6 (C.D.Cal. Feb.18, 2009). But courts have recognized that the numerosity requirement is generally satisfied when the class is in excess of forty members. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982); *see also Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal.2000); *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir.1997).

Although defendant does not dispute that numerosity exists as to Paragon's identified California security guard employees, it contends that each of the subclasses may contain only a

portion of the general class members." (Resp. Ps&As at 9.) In arguing that because plaintiffs have not provided evidence showing how many class members fall within each subclass, defendant contends plaintiffs do not satisfy the numerosity element of Rule 23(a)(1). Although defendant offers no citation to support its proposition, the Ninth Circuit has held "a class may be divided into subclasses and each subclass treated as a class," FED. R. CIV. P. 23(c)(4)(B), and each subclass "must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

In response to defendant's contention, plaintiffs do not even estimate the number of members in each subclass, and in this case, the only remaining subclass, Subclass 3. Nevertheless, the Court concludes that given the large number of purported class members, the proposed subclass is sufficiently numerous to make joinder impractical. *See Ornates-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal.1982) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."). Under the facts present, the Court finds that plaintiffs have demonstrated numerosity for purposes of class certification of the Class/Subclass 3.

### 2. Commonality

One or more questions of law or fact must be common to the proposed class. FED. R. CIV. P. 23(a)(2). As the Ninth Circuit has recently discussed, commonality requires plaintiffs to "demonstrate that the class members 'have suffered the same injury,'" not merely violations of "the same provision of law." *Parsons v. Ryan*, 754 F.3d 657, 674-75 (quoting *Dukes,* 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157(1982)). Plaintiffs' claims therefore "must depend upon a common contention" such that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.,* (quoting *Dukes* at 2551). "What matters to class certification . . . is not the raising of common 'questions'– even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.,* (quoting *Dukes* at 2551)(additional cite omitted). The *Dukes* Court also pointed out that there was not "some glue holding the alleged reasons for all [of] those [individual employment] decisions together [.]" *Id.*

6

at 2552. Therefore, it would "be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question why was I disfavored." *Id. (*quoting *Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 161 (1982)).

In *Dukes*, plaintiffs did not allege that Wal-Mart had any express corporate policy against the advancement of women. *Id.* at 2548. Instead, they alleged that local managers had discretion over pay and promotions based on a "strong and uniform 'corporate culture'" that permitted bias against women. *Id.* Similarly here, plaintiffs do not, and cannot, allege that defendant's written policy on rest periods is facially noncompliant with California law.

Labor Code § 226.7 provides:

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.
>
> (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Industrial Welfare Commission Wage Order No. 4, Section 12(A) provides:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

The various CBAs reflect defendant's policy for rest periods. For example, in the 2010 CBA, Section 6.6 provides.

> A.   Rest Periods – Employees shall be permitted to take rest periods during the workday at a rate of ten (10) minutes of continuous rest time per four (4) hours of work or major fractions thereof. To the extent practicable, the ten(10) minute rest period should be taken in the middle of the four (4) hour period of work. Authorized rest periods shall be counted as hours worked and will be paid without any deduction in wages. . . . In the event that an employee believes that s/he has not been permitted to take the authorized rest period in accordance with the Section, the employee shall be required to complete a Rest Period Report at the end of the workday . . . .

(Butler Decl., Exh. 1 at 7-8 to doc. #82.)

The 2007 Paragon Employee Handbook also provides in relevant part:

> **Rest Periods**
>
> Employees are entitled to a net 10-minute paid rest period for every four hours worked or major fraction thereof. Insofar as practicable the rest period should be in the middle of each four hour work period. The rest breaks are included in the court of hours worked per day.

(Ferritto Decl., Exh. 2 at 22.)

Paragon also has a Rest and Meal Period Agreement, which defendant characterizes as voluntary and plaintiffs describe as mandatory.

> **<u>Rest Periods</u>**. The Parties further acknowledge and agree that, pursuant to Industrial Welfare Commission Order No. 4-2001 § 12, Employee is permitted to take rest periods, which insofar as practicable, shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at a rate of ten (10) minutes net rest time per four (4) hours work or major fraction thereof. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(Ferritto Decl., Exh. 4.)

The Rest and Meal Period Agreement also sets forth that "this waiver may be revoked by Employee at any time, in writing." (*Id.*)

Thus, defendant has an official uniform policy concerning rest periods which is facially consistent with California law. Plaintiffs argue, however, that Paragon has two uniform policies that deny security officers off-duty rest periods: the Rest and Meal Period Agreement, and a firearms policy.

Plaintiffs contend that the Rest and Meal Period Agreement is a requirement for employment with defendant which serves as a policy requiring on-duty rest periods. According to plaintiffs, such a policy is by its nature a common question suited for class treatment. In support of their position, plaintiffs rely on *Abdullah v. U.S. Security Associates, Inc.*, 731 F.3d 952 (2013). In *Adbullah*, security guards, *as a condition of employment*, were "required to sign "on-duty meal period agreements." *Id.* at 955 (emphasis added). The Court noted that the parties did not dispute that the putative class members all signed a written agreement. Defendant's "person most knowlegeable," testified that "if an employee refuses to sign the 'on-duty meal period agreement,' he or she 'won't work for us.'" *Id*.

8

Here, however, plaintiffs provide no evidence that any security officer was not hired or was relieved of his or her employment by refusing to sign or by revoking the Agreement. In her declaration, Nicole Ferritto, Paragon's Director of Employee Relations, states unequivocally that security guards are not required to sign the Rest and Meal Period Agreement as a condition of employment and "[i]t is Paragon's policy that in the event a security officer declines to sign the Agreement, or otherwise revokes it, Paragon is to work with the security officer to find a site and/or post which permits off-duty meal periods." Daniel Sims, Paragon's Program Manager for the federal Los Angeles and San Diego contracts, testified that the Rest and Meal Period Agreement was provided to employees "[w]hen they come on board, they have an option in the orientation to sign up for the meal agreement." (Shavitt Decl., Exh. 24 at 621.)  Sims further stated that the employees "have an opportunity to accept it or not accept it. Or they can – it's also explained to them that at any time, once they have signed it, they can opt out of it." (*Id.* at 623.)  Although the evidence plaintiffs present does not need to be undisputed to show commonality, "[i]f there is no evidence that the entire class was subject to the same allegedly" unlawful policy or practice, then "there is no question common to the class." *Ellis,* 657 F.3d at 983. Because the evidence presented does not demonstrate that security officers were required to sign the Rest and Meal Agreement as a uniform policy of defendant, it is not a significant question of law that is "apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551.

Plaintiffs also contend that defendant has a uniformly applied firearm policy requiring all security guards to carry Paragon-issued, loaded weapons during their entire shift at all California locations. The parties agree that based on state law, a security guard may not carry or use their firearm in public places where security guard services are not being provided. Because of defendant's firearm policy, plaintiffs contend that every rest break is on-duty for all employees regardless of the working conditions at a particular station, *i.e.,* where the nature of the work does not warrant it. (Mtn. Ps&As at 3). As noted above, an employer may not require an employee to work during any meal or rest period. CAL. LABOR CODE § 226.7(b). Thus, plaintiffs argue that the common legal question to be determined is whether the nature of the security services provided, in this case the requirement of a firearm, prevents an employee from taking a

9

rest break that is not controlled by the employer.

Plaintiffs rely on the deposition testimony of Daniel Sims to show the firearm policy is uniform throughout California. However, Sims answered in the affirmative only the question that "all of the locations in Southern California that Paragon performs services for the federal government require a firearm; correct?" (*See* Sims Decl., Plfs's Exh. 1 at 207.) Plaintiffs also point to Paragon's Security Officer Handbook for the proposition that all security officers are required to have a firearm. (Mtn Ps&As at 4.) But the Handbook states "[f]or those security officers who carry firearms as required by the client contract may only carry Company-issued weapons and ammunition . . . . (Butler Decl., Exh. 9.) The Handbook does not indicate that firearms are required at all locations at issue in this case.

Plaintiffs have presented no evidence of a written policy requiring firearms for all security officers at all location. The scant evidence that even mentions firearms does not establish a uniform firearm policy. Although plaintiffs contend their rest period claim can be established by common proof of Paragon's uniform policy requirement that security guards carry loaded weapons their entire shift at all locations, in the absence of a showing that there is such a policy there is no showing of commonality.

The evidence presented fails to show that the proposed Subclass 3 members suffered under a uniform Paragon policy of denying its non-exempt employees off-duty rest breaks based on its firearm policy or the Rest and Meal Break Agreement.

Because the plaintiffs have not met the commonality requirement of Rule 23(a)(2), the Court need not determine the adequacy of plaintiffs' representation or the typicality of her claims or whether plaintiffs meet the requirement of Rule 23(b). The Court does note, however, that plaintiffs sought certification under Rule 23(b)(2). (Reply at 10.) "[C]lass certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir.2011) (quoting *Zinser*, 253 F.3d at 1195). As a result, Rule 23(b)(2) certification is available for monetary relief, if at all, only when such relief is incidental to the injunctive or declaratory relief sought. *Dukes*, 131 S.Ct. at 2557. Individualized monetary claims belong in Rule 23(b)(3), "with its procedural protections of

predominance, superiority, mandatory notice, and the right to opt out." *Dukes*, 131 S. Ct. at 2558. "The key to [a Rule 23(b)(2) ] class is ... the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 131 S.Ct. at 2557 (internal quotation marks omitted).  Here, plaintiffs seek compensatory damages, restitution, enhanced damages and penalties that are not incidental to the injunctive relief sought. Even if the remainder of the Rule 23(a)(2), (3) and (4) requirements were met, plaintiffs' motion for certification under Rule 23(b)(2) would only reach injunctive relief. Plaintiffs motion fails to seek or argue for class certification under Rule 23(b)(3).

## IV. Conclusion

Because plaintiffs' have not met the commonality test of Rule 23(a)(2), their motion for class certification is **DENIED**.

**IT IS SO ORDERED.**

DATED: September 8, 2014

M. James Lorenz
United States District Court Judge

COPY TO:

HON. BERNARD G. SKOMAL
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL